**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Josephine Amatucci

v.                                                    Civil No. 15-cv-356-JL[1]

James O'Brien et al.[2]


**REPORT AND RECOMMENDATION**


This civil rights action, filed, pursuant to 42 U.S.C. §

1983, by plaintiff Josephine Amatucci, is before the court for

preliminary review, pursuant to 28 U.S.C. § 1915(e)(2) and LR

---

[1]Amatucci has filed nine separate cases in this court arising from the incidents that form the basis of the above-captioned action.  Amatucci has voluntarily dismissed three of those cases: Amatucci v. Town of Wolfeboro, No. 15-cv-93-SM (D.N.H.); Amatucci v. Town of Wolfeboro, No. 15-cv-300-JL (D.N.H.); and Amatucci v. Chase, No. 16-cv-206-SM (D.N.H.). Three others have been consolidated with the above-numbered case: Amatucci v. Owen, No. 16-cv-82-JL (D.N.H.); Amatucci v. Dube, No. 16-cv-207-JD (D.N.H.); and Amatucci v. Chase, 16-cv-208-JL (D.N.H.).  Two other cases, Amatucci v. New Hampshire, No. 16-cv-239-JL (D.N.H.); and Amatucci v. Morgan, 16-cv-255-LM (D.N.H.), are pending preliminary review.

[2]The defendants in this action are: the Town of Wolfeboro, New Hampshire ("Town"); the Wolfeboro Police Department ("WPD"); WPD Chief Stuart Chase; WPD Officers James O'Brien, Shane Emerson, and Dean Rondeau; WPD Prosecutor Timothy Morgan; Town Manager Dave Owen; Town Planner Rob Houseman; Town employee Anne Marble; and New Hampshire State Trooper Greg Dube.

4.3(d)(2).  Several cases filed by Amatucci have been
consolidated into this case.  See Order (doc. no. 27); Amatucci
v. Dube, No. 16-cv-207-JD (D.N.H. July 25, 2016), ECF No. 5.
All of the pleadings filed in the consolidated cases have been
redocketed in this matter, as either motions or complaint
addenda.  Accordingly, before this court for preliminary review,
in this case, are: the original complaint (doc. no. 1); the
complaint addenda (doc. nos. 3-9, 12-16, 18-23, 25, 28-32, 34-
41, 44, 45, 48, and 51); the factual assertions in Amatucci's
motions (doc. nos. 17, 26, 33, 43, 49, and 50); and all of the
attachments filed with any of the documents listed here,
including a CD (doc. no. 6) and two DVDs (doc. nos. 31 and 36).
Also before the court is Amatucci's motion for summary judgment
(doc. no. 17).

**Background**

I.   May 7, 2014, Incident

     A.   Wolfeboro Police Department

     On May 7, 2014, Amatucci went to the Wolfeboro Police
Department ("WPD"), in the Wolfeboro Public Safety Building
("PSB").  There, Amatucci complained to WPD Chief Stuart Chase

about a "bogus" traffic violation filed against her in August 2013 by WPD Officer Dean Rondeau.  Amatucci alleges that WPD policy mandates that, in response to her complaint, Chase initiate an investigation of her allegations.  Instead, Amatucci alleges, Chase pointed his finger in her face and told her that he would "get" her and arrest her "on the spot" if she ever again accused any WPD officer of misconduct.  Doc. No. 1, at 6. Amatucci asserts that Chase then physically pushed her out of the PSB.

    B.   <u>Wolfeboro Town Hall</u>

Amatucci states that she was frightened by Chase, and so left the WPD and went directly to the Town Hall for the Town of Wolfeboro ("Town") to report Chase's threat to the Town Board of Selectmen ("Board"), as she believed that the Board had disciplinary authority over Town employees, including WPD officers.  At Town Hall, Amatucci spoke to Town employee Anne Marble, who told Amatucci that the Board had no jurisdiction to address issues of police misconduct, and that Amatucci should contact the Town Police Commission.  Marble also told Amatucci that the members of the Board were not then at Town Hall, as

they were in court in Concord, along with Town Manager Dave Owen, and could not be reached.

Amatucci started to leave Town Hall.  As she did so, the acting Town Manager, Town Planner Rob Houseman, approached Amatucci, "grabbed" her arm, and ordered her to go with him to an unused courtroom located away from Marble's office.  Prior to grabbing Amatucci's arm, Houseman had directed a Town employee to call the police to report that Amatucci was creating a disturbance, which one of them did.  Amatucci states that Houseman attempted to confine her to the courtroom until the police arrived.

Amatucci asserts that she "was able to free herself from his hold and headed straight to Ms. Marble's office to tell her what Houseman had just done to her."  Doc. No. 28, at 9. Houseman jumped in front of the door to Marble's office, stopping Amatucci from reporting her grievance.  Amatucci states that any disturbance that occurred at Town Hall on May 7, 2014, was caused, not by her, but by Houseman's actions in trying to prevent Amatucci from lodging her complaints against Chase and Houseman.  Amatucci then stated that she was leaving Town Hall and going to the Carroll County Sheriff's Department ("CCSD") to

4

report the actions of Chase and Houseman that day.

    C.   <u>Motor Vehicle Pursuit and Arrest on May 7, 2014</u>

In response to the disturbance call to the police, WPD Officer James O'Brien went to Town Hall, but did not arrive until after Amatucci had left.  After being advised that Amatucci was on her way to the CCSD, O'Brien called the CCSD and the WPD to ask for assistance in a pursuit of Amatucci.  WPD Officer Shane Emerson responded and located Amatucci, who was in her car on her way to the CCSD.  Emerson put on his lights and siren to attempt to pull Amatucci over for speeding.  Amatucci did not pull over.  Amatucci asserts that she was not speeding, and that she did not stop her car in response to Emerson's lights and siren because she believed the police had no probable cause to stop her.  Amatucci further states that she could see Chase's cruiser following her, with lights and siren activated, and believed Chase was pursuing her to carry out his earlier threat to "get [her] and arrest [her] on the spot," which frightened her, and she continued driving to try to reach the CCSD for her own protection.

Before she arrived at the CCSD, Amatucci was signaled by

hand, by CCSD employees Sgt. Timothy Thompson and Deputy Brian
King to pull over, which she did.  Amatucci got out of her car
and immediately told Thompson and King that she was on her way
to the CCSD because she needed help, and that she was in fear
for her safety.  Amatucci was arrested by Thompson, Emerson, and
Chase, and placed into a WPD cruiser to be transported to jail
for booking and processing.  While in the WPD cruiser, Amatucci
spoke to Thompson and told him of what had occurred that day,
that she had done nothing wrong, and that she needed protection.
Amatucci was then transported to the jail to be processed.

After Amatucci's arrest, Chase had her car towed.  Amatucci
states that it took her three days to gather the money to get
her car out of impound.  Amatucci states that, without a car,
she was unable to leave her home, and was thus "imprisoned" for
three days.


II.  No Trespass Order

A public Board meeting was held on May 21, 2014.  At that
time, Amatucci asked Owen to investigate the May 7, 2014,
incident.  Owen and the Board declined to investigate the May 7,
2014, incident, and instead, issued a "No Trespassing Order"

6

("NTO") to Amatucci.  The NTO, which was approved and signed by

Owen and the Board, largely prohibited her from entering the

Town Hall, and entirely prevented her from entering the PSB.

The NTO, issued May 21, 2014, stated as follows:

> In light of the unfortunate incidents at the Public
> Safety Building and Town Hall on Wednesday, May 7,
> 2014, and in light of several other incidents during
> the past several years, I am hereby ordering you, on
> behalf of the Town and until further written notice,
> not to enter the Public Safety Building, at 251 South
> Main Street in Wolfeboro or the Town Hall at 84 South
> Main Street in Wolfeboro.  Your course of conduct has
> caused great disturbance to the Town's employees and
> have caused some of them to fear for their personal
> safety.

Doc. No. 28, at 19.  The order concludes:

> This order is issued pursuant to the Town Manager's
> and the Board of Selectmen's authority to regulate the
> use of Town property under RSA 37:5, RSA 41:11-a and
> any other applicable statute.  It is also issued
> pursuant to the authority of the Town Manger and the
> Board of Selectmen to manage and supervise the affairs
> of the Town to ensure the safety and well-being of its
> employees.
>
> Again, we regret having to take these steps with
> respect to any citizen, but believe that they are well
> justified in the interest of the efficiency of public
> employees and their safety and well-being.

Doc. No. 28-1, at 21.

In a letter dated May 23, 2014, advising Amatucci of the

NTO, Owen stated:

> Relative to the request you made to me at the Board of
> Selectmen's meeting on May 21, 2014, where you asked
> that I undertake an investigation of the incidents
> that occurred on May 7th which resulted in your
> arrest, I decline to undertake any such investigation.
>
> Furthermore, the Board of Selectmen has approved and
> signed a "No Trespass" order which I am enclosing for
> your information.  As you will see, you are now
> prohibited from entering either the Town Hall or
> Public Safety Building for any purpose except for
> attending public meetings.  Any violation of this "No
> Trespass" order by you may result in your arrest and
> prosecution for criminal trespass.
>
> I regret having to take this action against you, but
> your verbal abuse, intimidation, and harassment of
> Town employees has got to stop.

Doc. No. 28-1, at 9.

Amatucci alleges that by virtue of the NTO, the employees
of both buildings were improperly advised that Amatucci had done
something wrong that was serious enough to warrant denying her
access to those buildings.  Amatucci alleges that her reputation
was thus damaged by the NTO, and was further damaged by a local
newspaper story about the issuance of the NTO.

Amatucci states that she was not afforded a hearing or any
other opportunity to oppose the NTO prior to its issuance.  On
November 7, 2014, almost five months after the NTO was issued,
Owen sent Amatucci a letter stating that the Board would afford
her an opportunity to be heard in opposition to the NTO.  That

letter stated:

> Relative to the "No Trespass" order that the Board of
> Selectmen approved at their May 21, 2014 meeting, and
> which was issued to you on May 23, 2014, they would
> like to provide you with the opportunity to state any
> reason that you may have for opposing the order.  Once
> the Board of Selectmen receives your written reasons
> for opposing the "No Trespass" order, the Board of
> Selectmen will carefully consider your reasons for
> opposing the order in deciding whether it should
> continue to be in force.  The Board of Selectmen can
> then either: (1) continue the "No Trespass" order as
> is; (2) revoke the "No Trespass" order; or (3) amend
> the order in some fashion, such as allowing you to set
> forth your reasons in advance for needing to visit the
> Public Safety Building or the Interim Town Offices
> location on a case-by-case basis, which could then be
> reviewed based on your need to conduct business with
> Town Departments.
>
> As we have seen since the issuance of the "No
> Trespass" order to you, it already allows you to
> attend public meetings, and you have made liberal use
> of that ability.  And in the case in which you needed
> to register a vehicle at the Town Clerk's office, we
> made an appointment for you with the Town Clerk, and
> waived the "No Trespass" order for the duration of
> your visit to her office.  Further, you have been
> involved in no further disturbances at the Town
> Offices requiring the calls to the Police Department
> for assistance.  So, from the Town's perspective, the
> "No Trespass" order has been effective and has served
> its purpose.  However, if you have reasons for
> opposing the "No Trespass" order or believe that it
> could be improved, the Board of Selectmen is
> soliciting your input with this request.

Doc. No. 28-1, at 23.  Amatucci's filings are silent as to

whether or how she responded to the November 7, 2014, letter,

although the record indicates that the NTO remains in effect.

III. <u>October 2014 Harassment Complaint</u>

On October 1, 2014, Amatucci submitted a harassment complaint against Houseman, based on the events of May 7, 2014. On October 9, 2014, Owen and Board Chairperson Linda Murray wrote a letter to Amatucci stating as follows:

> Relative to your demand for an investigation to be performed on the role of Rob Houseman during the disturbance that you created at Town Hall on May 7, 2014, I have previously communicated to you that I decline to undertake any such investigation.  In fact, I support and applaud Mr. Houseman's actions during the incident to protect frightened employees from your abusive behavior.
>
> Your recent attempts to portray yourself as the person that was harassed, rather than the Town employees that you were abusing with your out-of-control behavior, is bizarre to say the least, but given your long history of unfounded accusations and litigation with the town, not totally unexpected.  We will not be party to your attempts to rewrite history and make other persons responsible for the results of your own behaviors.

Doc. No. 28-1, at 7.

IV.  <u>October 1, 2015, and July 11, 2016, Incidents</u>

In September 2014, Owen advised Amatucci that the prohibitions of the NTO would be waived for the duration of an

10

appointment at Town Hall, on September 8, 2014, at 8:00 a.m., to allow Amatucci to register her car.  The following year, Amatucci states that she received permission from a Town Clerk's office employee to go to Town Hall to register her car on October 1, 2015.  Amatucci states that when she arrived at Town Hall to register her car, however, Owen called the police and then started to scream at Amatucci in front of members of the public.  Amatucci claims that Owen called the police and yelled at her in retaliation for her previous accusations of misconduct against the Town and WPD employees.  Amatucci does not allege that she was arrested or had any further interaction with any of the defendants on that date.

On July 11, 2016, Amatucci went to Town Hall to pay her property taxes pursuant to an appointment she had made with the Town Clerk.  Amatucci asserts that when she arrived at Town Hall Houseman was "standing over" her in an effort to intimidate her in retaliation for her May 7, 2014, complaint against Chase.


V.   State Circuit Court Criminal Trial on May 7, 2014, Motor Vehicle Offenses

Amatucci was charged with speeding and disobeying a police officer for the May 7, 2014, incident.  On June 25, 2015, a

trial was held on those charges in the Carroll County Circuit
Court ("CCCC"), before Judge Patten.  In a written order, Judge
Patten found Amatucci not guilty of speeding.  See State v.
Amatucci, No. 464-2014-CR-00836 (N.H. Cir. Ct., 3rd Cir., Dist.
Div., Carroll Cty., June 25, 2015) ("CCCC Order") (doc. no. 35-
3).  The court found that Amatucci had been travelling forty-
two miles per hour in an area where the posted speed limit was
thirty miles per hour.  The court further found, however, that
the prosecution had failed to prove beyond a reasonable doubt
that Amatucci had been travelling at a speed that was
"unreasonable and imprudent for the conditions existing," and
that it had therefore failed to prove a violation of the state
speeding statute, N.H. Rev. Stat. Ann. ("RSA") § 265:60.  CCCC
Order, Doc. No. 35-3, at 3.  The court then found Amatucci
guilty of disobeying a police officer, a Class B misdemeanor,
for failing to stop for the police once they had activated their
lights and sirens in an attempt to pull her over.  Amatucci now
claims that Judge Patten had no basis upon which to find her
guilty of disobeying a police officer, and only did so to
protect Chase from Amatucci's accusations of misconduct.

    Amatucci alleges that prior to the CCCC trial, WPD

12

Prosecutor Timothy Morgan removed two CDs from the WPD evidence room, and replaced them with two DVDs.  The removed discs, Amatucci claims, "were the true copies depicting the events in the police station, and the DVD's were fabricated and falsified."  Doc. No. 35, at 5.  Amatucci further asserts that Morgan "fabricated exculpatory evidence from a CD to a DVD which should have depicted Police Chief Stuart Chase criminally threatening her and assaulting her in the police station on May 7, 2014, which was evidence of her STATE OF MIND, which went directly to [Amatucci's] innocence."  Doc. No. 35, at 3.  Amatucci asserts that Morgan failed to provide her, in discovery, with a copy of the DVD showing Chase threatening her in the PSB on May 7, 2014, and that that evidence would have demonstrated that she did not possess a culpable state of mind when she refused to stop for the police cruisers later that day.  Amatucci states that, instead of producing the exculpatory DVD in evidence at trial, Morgan presented a fabricated disc which omitted the allegedly exculpatory evidence "that he was concealing in the files."  Id.  Amatucci claims to have found "the true video concealed in the bottom of the files after her conviction."  Doc. No. 35, at 9.

After a sentencing hearing, the CCCC issued a sentencing order on September 4, 2015.  In the order, the court found that a sixty-day revocation of Amatucci's license and registration was appropriate under the circumstances of Amatucci's case. Based on Amatucci's lack of criminal record, however, the court suspended the revocation, conditioned on Amatucci having no further motor vehicle convictions for one year.  The court also imposed the statutory minimum fine of $500, but suspended the fine for a year on the same condition.

VI.  May 7, 2015, Incident

Amatucci claims that on May 7, 2015, she was properly and safely passing another car in Rochester, New Hampshire, when New Hampshire State Trooper Greg Dube pulled her over for following the other car too closely.[3]  Amatucci went to trial in the state court in Rochester and was found guilty.  See State v. Amatucci, No. 471-2015-cr-01314 (N.H. Cir. Ct., 7th Cir., Dist. Div., Rochester, Oct. 2, 2015).  Amatucci's requests for post-conviction relief in the trial court were denied, and she did

_____

[3]In some of her filings, Amatucci identifies the officer who pulled her over on May 7, 2015, as New Hampshire State Trooper Dubois.

14

not appeal the guilty finding to the NHSC.

Amatucci asserts that during a recent meeting with
Wolfeboro Town Attorney Mark Puffer, Attorney Puffer asked
Amatucci about the traffic violation in Rochester.  Amatucci
states that at the time Attorney Puffer made the inquiry, he
also mentioned that Owen was aware of the violation.  Amatucci
asserts that it was impossible for either Owen or Attorney
Puffer to know about that traffic violation, unless the
Rochester traffic stop was the product of a conspiracy between
the Town and WPD defendants and Dube, to insure that she
received a traffic violation, so that her suspended license
revocation in the CCCC would be imposed.  The record before this
court does not reveal whether the suspended revocation and fine
were ever imposed.


VII. Costs of Litigation

Amatucci states that a Town official has had false
information placed in a recent article in the local paper, The
Granite News, stating that Amatucci's lawsuits have cost the
Town's taxpayers $29,483.74 between January 2014 and February
2015.  Amatucci asserts that the information is false because

the costs of her civil suits against the Town are paid for by
the Town's insurance carrier.  Amatucci states that as a result
of the publication of this false information, she has suffered a
loss of "great injury to my good character," and that she has
been subject to "tremendous harmful harassment" by the Town's
taxpayers.  Doc. No. 32, at 2-3.

Amatucci has filed with her pleadings the minutes of a non-
public Wolfeboro Police Commission meeting held on May 15, 2014.
Doc. No. 28-1, at 20.  At that meeting, according to the
minutes:

> Chief Chase noted the legal line for litigation is
> over budget and it was suggested by Mr. Owen to let it
> run the way it is and if there is any funds left in
> the Town legal line they may be able to offset the
> overage as many of the fees are related to advise
> [sic] from Attorney Puffer dealing with Josephine
> Amatucci.
>
> Commissioner Copeland questioned if there was any way
> to go after Ms. Amatucci for these costs.
>
> Mr. Owen replied that he has request [sic] Attorney
> Puffer to draft a "No Trespass" order against Ms.
> Amatucci not allowing her to enter the Town Hall or
> Public Safety Building except for purposes of
> attending public meetings and this will be presented
> to the Board of Selectmen at their next meeting for
> approval.

Id.

**Discussion**

I.   <u>Preliminary Review</u>

    A.   <u>Standard</u>

In determining whether a pro se pleading states a claim, the court construes the pleading liberally.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).  Disregarding any legal conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a facially plausible claim to relief.  <u>Hernandez-Cuevas v. Taylor</u>, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)).

    B.   <u>Claims Asserted</u>

The court has reviewed the documents listed above, and lists here all of the claims for relief Amatucci has asserted in those documents, as follows:

    1.   Defendant WPD Chief Stuart Chase:

        (a)   violated Amatucci's First Amendment right to petition the government for a redress of grievances on May 7, 2014, when he threatened to "get" her and to arrest her, and then caused her to be arrested after a traffic stop, in retaliation for exercising her First Amendment right to file an administrative complaint with the WPD alleging misconduct of WPD officers;

17

(b)  violated Amatucci's Fourth Amendment right not to be subject to unreasonable seizure when, without probable cause or a warrant, he pulled Amatucci over while she was driving, seized her person, arrested her, handcuffed her, and had her incarcerated;

(c)  violated Amatucci's Fourteenth Amendment right not to be restrained of her liberty for three days, without due process when he seized and impounded her car on May 7, 2014, which left her without any available means to leave her home, until she could retrieve her impounded car;

(d)  committed the state law tort of assault against Amatucci on May 7, 2014, when he "pushed" her out of the PSB; and

(e)  violated Amatucci's rights under state law by subjecting her to malicious prosecution, false arrest, and false imprisonment, arising out of the events leading to her arrest on May 7, 2014, and ensuing prosecution.

2.   Defendant Town Planner Robert Houseman:

(a)  violated Amatucci's First Amendment right to petition the government for a redress of grievances when, on May 7, 2014, he prevented her from lodging complaints about misconduct by Chase and by Houseman;

(b)  violated Amatucci's Fourth Amendment rights on May 7, 2014, when he grabbed her arm and confined her to a room in Town Hall, and impeded her efforts to leave Town Hall, without probable cause or a warrant permitting him to do so; and

(c)  committed the state law torts of assault and false imprisonment against Amatucci when he grabbed her arm and forced her to remain in a room in Town Hall, on May 7, 2014, thereby impeding her efforts to leave the building.

18

(d)  violated Amatucci's First Amendment right to
petition the government for a redress of grievances
when, on July 11, 2016, he stood over her at the Town
Clerk's office while she was there to pay her taxes,
in retaliation for her May 7, 2014, complaint against
Chase.

3.  Defendant Town Manager Dave Owen:

(a)  violated Amatucci's First Amendment associational
right to enter and remain on public property, and
right to petition the government for a redress of
grievances, by issuing a "No Trespass Order"
prohibiting her from entering the PSB or Town Hall, in
retaliation for her complaints against Town and WPD
employees.

(b)  violated Amatucci's First Amendment associational
right to enter and remain on public property, and
Amatucci's Fourteenth Amendment due process rights by
issuing a "No Trespass Order" prohibiting her from
entering the PSB or Town Hall, without providing her
with any pre-deprivation due process;

(c)  violated Amatucci's First Amendment right to
petition the government for a redress of grievances,
by conspiring with New Hampshire State Trooper Greg
Dube to improperly insure that Amatucci's license
revocation and fine, which had been suspended by the
CCCC, were imposed, in retaliation for her complaints
against WPD officers and other Town employees; and

(d) is liable to Amatucci for the state law tort of
defamation by: (i) issuing a "No Trespass Order" on
May 23, 2014, thereby communicating to the employees
of the PSB and Town Hall that Amatucci had engaged in
misconduct serious enough to warrant her exclusion
from public property, causing damage to her
reputation; and (ii) on October 1, 2015, screaming at
Amatucci in or near the office of the Town Clerk,
where members of the public could hear, causing damage

19

to Amatucci's reputation.

4.   Defendant Town employee Anne Marble:

(a)  violated Amatucci's First Amendment right to petition the government for a redress of grievances on May 7, 2014, when she provided Amatucci with incorrect information about the authority of the Town Board of Selectmen to hear and decide complaints about police misconduct, in retaliation for her complaints against Town and WPD employees; and

(b)  committed the state law tort of fraud against Amatucci by falsely telling her that the Town Board of Selectmen did not have disciplinary authority over the WPD.

5.   Defendants WPD Officers Shane Emerson and James O'Brien:

(a)  violated Amatucci's First Amendment right to petition the government for a redress of grievances when they pulled her over and arrested her, in retaliation for her prior complaints against Town and WPD officials;

(b)  violated Amatucci's Fourth Amendment right not to be subject to unreasonable seizure when, without probable cause or a warrant, they pulled her over, seized her person, arrested her, handcuffed her, and had her incarcerated, without probable cause or a warrant giving them permission to do so; and

(c)  violated Amatucci's rights under state law by subjecting her to malicious prosecution, false arrest, and false imprisonment, arising out of the events leading to her arrest on May 7, 2014, and ensuing prosecution.

6.   Defendant WPD Prosecutor Timothy Morgan:

(a)  violated Amatucci's First Amendment right to

petition the government for a redress of grievances
when, in retaliation for her attempts to report
misconduct by Town and WPD employees, Attorney
Morgan improperly prosecuted her for driving offenses;

(b)  violated Amatucci's Fourteenth Amendment right to
due process, and Sixth Amendment right to a fair trial
and to confront the evidence against her, when she
withheld exculpatory evidence from her and the CCCC
prior to and during her June 2015 criminal trial in
that court, on the May 7, 2014, motor vehicle
offenses, causing her to be convicted of disobeying a
police officer; and

(c) violated Amatucci's rights under state law by
subjecting her to malicious prosecution, arising out
of the events leading to her arrest on May 7, 2014,
and ensuing prosecution.

7.   An unnamed Town employee defamed Amatucci by providing
false information to the Granite State News newspaper that
Amatucci had cost the Wolfeboro taxpayers more than $29,000
in legal costs between January 2014 and February 2015, thus
damaging Amatucci's reputation and causing her to be
harassed by members of the public.

8.   Defendant Town of Wolfeboro:

(a) violated Amatucci's First Amendment associational
right to enter and remain on public property, and
Amatucci's Fourteenth Amendment due process rights, by
issuing a "No Trespass Order" prohibiting her from
entering the PSB or Town Hall, without providing her
with any pre-deprivation due process;

(b)  violated Amatucci's First Amendment right to
petition the government for a redress of grievances by
issuing a "No Trespass Order" and refusing to
investigate her complaints against Town and WPD
employees, in retaliation for her previous complaints
against Town and WPD employees;

(c)  violated Amatucci's federal constitutional rights by maintaining a "de facto" policy of refusing to investigate complaints of police misconduct, thereby causing the constitutional violations alleged in this action;

(d)  is liable for the state law claims asserted against any Town or WPD employee in this action, under a theory of respondeat superior.

9.   Defendant New Hampshire State Trooper Greg Dube conspired with Town Manager Dave Owen to violate Amatucci's First Amendment right to petition the government for a redress of grievances, by improperly pulling Amatucci over in Rochester, New Hampshire on May 7, 2015, and prosecuting her for a motor vehicle offense, in order to insure that Amatucci's license revocation and fine, which had been suspended by the CCCC, were imposed, in retaliation for her complaints against WPD officers and other Town employees; and

10.  All of the defendants named in this action are liable to Amatucci for the state torts of intentional infliction of emotional distress, and negligent infliction of emotional distress, for engaging in the acts underlying the above-listed violations of Amatucci's state and federal rights, as Amatucci is a seventy-seven year old woman with a "nervous condition," and the defendants caused her extreme emotional distress.


C.   <u>Claims to be Served</u>

The court finds that, as to the claims identified above as Claims 1(a), 1(d), 2(a)-(c), 3(a)-(b), 3(d)(i), 5(a), 8(a)-(b), and 8(d), Amatucci has stated the minimum facts necessary to allow those claims be served on the defendants.  In an Order issued simultaneously with this Report and Recommendation, the

court directs service of those claims on the appropriate

defendants.

> D.   Arrest, Imprisonment, and Prosecution for May 7, 2014,
> Driving Offenses - Claims 1(b), 1(e), 5(b)-(c), and 6(c)

Amatucci asserts that her Fourth Amendment right not to be

subjected to a warrantless arrest without probable cause, and

her rights not to be subject to false arrest, false

imprisonment, and malicious prosecution, were violated when she

was pulled over for speeding, a charge for which she was later

acquitted, on May 7, 2014.  In general, an arrest is lawful if

the police officer has probable cause.  Holder v. Town of

Sandown, 585 F.3d 500, 504 (1st Cir. 2009) (citation omitted).

> A police officer has probable cause when, at the time
> of the arrest, the facts and circumstances within the
> officer's knowledge . . . are sufficient to warrant a
> prudent person, or one of reasonable caution,
> in believing, in the circumstances shown, that the
> suspect has committed, is committing, or is about to
> commit an offense.

Id. (internal quotation marks and citations omitted).  Here, at

the time that Amatucci was pulled over, Emerson had noted that

she was travelling at a speed over the posted speed limit.

While, as evidenced by Amatucci's acquittal on that charge, that

fact is not sufficient to establish proof of speeding beyond a

reasonable doubt at trial, it is sufficient to establish probable cause for the stop.  See RSA § 265:60 ("any speed in excess of the limit specified . . . shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful").  Because her arrest was based on probable cause, Amatucci cannot assert a Fourth Amendment claim, or a violation of state tort law, based on her arrest and detention pursuant to that arrest.

Amatucci also asserts a malicious prosecution claim against WPD prosecutor Morgan, under the Fourth Amendment and state tort law, for prosecuting her on the charges for which she was arrested on May 7, 2014.  "[A] plaintiff may bring a suit under § 1983 . . . [for a Fourth Amendment malicious prosecution claim] if [she] can establish that: 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'"  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013) (citation omitted).  The information establishing probable cause for Amatucci's arrest, as set forth above, also established probable cause for the ensuing initiation of a criminal prosecution.

Amatucci has failed to state any claim for false arrest, false imprisonment, or malicious prosecution, relating to the May 7, 2014, incident.  Accordingly, the district judge should dismiss Claims 1(b), 1(e), 5(b)-(c), and 6(c), from this action.

### E.   Car Impound – Claim 1(c)

Amatucci alleges that Chief Chase deprived her of her liberty by impounding her car for three days, depriving her of a means of leaving her home during that period.  Amatucci states that, due to her inability to pay to pick her car up, she could had no available means to leave her house.  Without more, these allegations fail to state any claim upon which relief might be granted, and the district judge should dismiss Claim 1(c) from this action.

### F.   Conspiracy – Claims 3(c) and 9

Amatucci has alleged that Trooper Dube and Dave Owen conspired to violate her civil rights.  "'A civil rights conspiracy as commonly defined is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong

against or injury upon another, and an overt act that results in damages.'" Omran v. Bleezarde, No. 1:15-CV-00190-DBH, 2016 WL 2865383, at *2-3, 2016 U.S. Dist. LEXIS 31812, at *5-*6 (D.N.H. Mar. 10, 2016) (citation omitted), R&R adopted by, No. 1:15-CV-190-DBH, 2016 WL 2755434, 2016 U.S. Dist. LEXIS 62293 (D.N.H. May 11, 2016).

Amatucci alleges that Trooper Dube pulled her over in Rochester in May 2015 and issued a motor vehicle violation against her.  Amatucci then alleges that Owen was aware that she had been pulled over, and that she intended to fight the charge in court.  Stripped of legal conclusions, no facts asserted by Amatucci suggest that Dube and Owen acted together to do anything, unlawful or otherwise.  Accordingly, Amatucci's conspiracy claims against Owen and Dube, Claims 3(c) and 9, should be dismissed.  The district judge should also drop Dube from this action, as Amatucci has asserted no other claims against him.

G.   Defamation - Claims 3(d)(ii) and 7

Amatucci states that Dave Owen defamed her by screaming at her and calling the police when she went to Town Hall to

26

register her car on October 1, 2015.  Amatucci further alleges

that a Town employee defamed her by mischaracterizing

information about the amount of money Amatucci's actions had

cost the Town's taxpayers.

A plaintiff in New Hampshire proves defamation by showing

that a defendant failed to exercise reasonable care in

publishing, without a valid privilege, a false and defamatory

statement of fact about the plaintiff to a third party.  See

Pierson v. Hubbard, 147 N.H. 760, 763, 802 A.2d 1162, 1165

(2002).  A statement is defamatory if it tends to lower

plaintiff in the esteem of any substantial and respectable group

of people.  Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 507

(1st Cir. 2002) (citing Nash v. Keene Publ'g Corp., 127 N.H.

214, 219, 498 A.2d 348, 351 (1985)).  "'No mere claim of the

plaintiff can add a defamatory meaning where none is apparent

from the publication itself.'"  Catalfo v. Jensen, 657 F. Supp.

463, 366 (D.N.H. 1987) (citations omitted).

Without more, Amatucci's allegations that Owen screamed at

her, and called the police, are insufficient to demonstrate that

he published any false or defamatory statement of fact about

her.  Further, Amatucci does not name any specific defendant to

her claim concerning the publication of litigation costs in The
Granite News.  Accordingly, the district judge should dismiss
Claim 3(d)(ii) for failure to state a claim, and should dismiss
Claims 7, without prejudice to her ability to move to amend her
complaint in this matter to name a specific defendant, and to
state, with specificity, what acts or admissions of that
individual caused her to be defamed.

       H.    <u>Claims Asserted Against Anne Marble and Robert</u>
             <u>Houseman</u>

          1.    <u>Retaliation – Claims 2(d) 4(a)</u>

Amatucci alleges that Town employees Marble and Houseman
retaliated against her for filing complaints against Town and
WPD employees – Marble, by providing Amatucci with the false
information that the Board could not hear and act on citizen
allegations of misconduct, and Houseman, by standing over
Amatucci while she was in the Town Clerk's office on July 11,
2016.  Stripped of conclusory statements, Amatucci's allegations
against Marble fail to demonstrate that Marble knew that the
information she communicated to Amatucci was false, that she was
motivated by any intent to retaliate or that the information
provided, to the extent it can be construed as an adverse act,

28

was more than de minimus.  Amatucci's has also failed to assert

that Houseman either possessed retaliatory intent, or engaged in

a non-de minimus act against her, on July 11, 2016.

Accordingly, the retaliation claims asserted against Houseman

and Marble, Claims 2(d) and 4(a), should be dismissed.


      2.   <u>Fraud – Claim 4(b)</u>

    Amatucci alleges that Marble committed fraud by providing

her with false information concerning the scope of the Board's

authority.  To prove a state law tort claim for fraud, a

plaintiff "must establish that the other party 'made a

representation with knowledge of its falsity or with conscious

indifference to its truth with the intention to cause another to

rely upon it.'  In addition, the party seeking to prove fraud

'must demonstrate justifiable reliance.'"  <u>Van Der Stok v. Van</u>

<u>Voorhees</u>, 151 N.H. 679, 682, 866 A.2d 972, 975 (2005) (citation

omitted).

    Amatucci has not pleaded facts to show that she relied to

her detriment on Marble's statements.  Rather, Amatucci has

alleged that she continued to bring her complaints of police

misconduct and demands for action to the Board.  Accordingly,

Amatucci has failed to state a state law claim of fraud against
Marble, and Claim 4(b) should be dismissed.  Further, the
district judge should drop Marble as a defendant in this action,
as Amatucci has failed to state a cognizable claim against her.

    I.   <u>Claims Against Timothy Morgan</u>

       1.   <u>Retaliatory Prosecution - Claim 6(a)</u>

Amatucci alleges that WPD Prosecutor Morgan violated her
First Amendment right to petition the government for a redress
of grievances by prosecuting the driving offenses for which she
was arrested on May 7, 2014, in retaliation for her previous
complaints against Town and/or WPD employees.  In order to state
a claim for retaliation, Amatucci must allege: (1) the conduct
which led to the alleged retaliation was protected by the First
Amendment; (2) some adverse action by the defendant; and (3) a
causal link between the exercise of her First Amendment rights
and the adverse action taken.  <u>See</u> <u>Hannon v. Beard</u>, 645 F.3d 45,
48 (1st Cir. 2011).  Amatucci has failed to allege any facts
suggesting that Morgan's decision to prosecute her was motivated
by any intent to retaliate against her.  Accordingly, she has
failed to state a retaliation claim against Morgan, and the

district judge should dismiss Claim 6(a) from this action.

2.   Withholding Exculpatory Evidence – Claim 6(b)

Amatucci alleges that Morgan violated her Fourteenth Amendment due process rights, and Sixth Amendment rights to a fair trial and to confront the evidence against her, by withholding exculpatory evidence from her, and the trial court, concerning her May 7, 2014, driving offenses.  Amatucci claims that Morgan's suppression of that evidence caused her to be improperly convicted of disobeying a police officer in the state court.

"When 'a judgment in favor of the plaintiff would necessarily imply the invalidity of [her] conviction or sentence,' . . . 1983 is not an available remedy," Skinner v. Switzer, 562 U.S. 521, 533 (2011) (quoting Heck v. Humphrey, 512 U.S. 477, 487 (1994)), absent a showing that the conviction has been invalidated.  See Heck, 512 U.S. at 487.  Claims asserting that a prosecutor suppressed exculpatory evidence, and thereby caused prejudice to the accused at trial, call into question the validity of a conviction, and therefore are not cognizable in a § 1983 action, where the conviction has not been deemed invalid.

31

Amatucci has failed to demonstrate that her conviction has been invalidated.  To the contrary, the record before the court indicates that both her post-conviction litigation in the CCCC, and her direct appeal of her conviction, were denied.  Accordingly, Amatucci cannot bring this claim in a § 1983 action, and Claim 6(b) should be dismissed.

### J.   Municipal Liability – Claim 8(c)

Amatucci alleges that the Town is liable to her for violations of her First Amendment rights to free association and to petition the government for a redress of grievances, and her Fourteenth Amendment right to due process, under a theory of municipal liability.  Under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978), "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief" for alleged constitutional violations arising from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" Id.; see also Connick v. Thompson, 563 U.S. 51, 60 (2011). Municipal liability can be asserted "'where the municipality itself causes the constitutional violation at issue.'"  Santiago

32

v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989) (emphasis in original) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

Amatucci asserts in Claim 8(c) that the Town maintained a "de facto" policy of refusing to investigate complaints of police misconduct.  Amatucci claims this "de facto" policy caused the constitutional violations alleged in this action, by allowing Town officials and WPD officers to feel free to act with impunity in violating her rights.[4]  Even assuming, without deciding, that Amatucci can demonstrate the existence of such a "de facto" policy, she has failed to demonstrate that the policy itself was the moving force behind the constitutional violations

---

[4]To the extent Amatucci seeks to assert any claim arising out of an alleged "Code of Silence" maintained by Town and WPD officials to thwart her efforts to complain of police misconduct since 2003, she is precluded from litigating that claim in this court.  Amatucci has been "enjoined from commencing any further actions in this court arising from her 2003 arrest without prior approval from a judge of this court." Amatucci v. Hamilton, No. 13-cv-87-SM (D.N.H. July 29, 2013).  A judge of this court has recently ruled that Amatucci's allegations "that she is a victim of a police conspiracy and 'code of silence' related to her 2002 and 2003 arrests," fall within that restriction and may not be litigated here.  See Amatucci v. Town of Wolfeboro, No. 13-cv-501-PB (D.N.H. June 16, 2014).  Accordingly, the court does not construe the allegations in Amatucci's pleadings in this matter to include such claims.

alleged.  Accordingly, Amatucci has failed to state any claim of municipal liability with respect to the matters alleged in Claim 8(c), and that claim should be dismissed from this action.[5]

K.    Intentional and Negligent Infliction of Emotional Distress – Claim 10

Amatucci has asserted that the defendants named in this action are liable to her for the state law torts of intentional and negligent infliction of emotional distress, arising out of the events underlying this action.  To assert a claim for the intentional infliction of emotional distress:

> a plaintiff must allege that a defendant by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another.  In determining whether conduct is extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice.  Rather, liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

---

[5]Amatucci has stated sufficient facts to allow municipal liability claims to proceed against the Town arising out of the issuance of the NTO, and for that reason, the court has directed service of Claims 8(a) and 8(b) in the Order issued this date.

<u>Tessier v. Rockefeller</u>, 162 N.H. 324, 341, 33 A.3d 1118, 1131 (2011) (citations and internal quotation marks omitted).  To assert a claim under New Hampshire law for the negligent infliction of emotional distress, a plaintiff must show "(1) causal negligence of the defendant[s]; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms.  Thus, to state a viable negligent infliction claim, the plaintiff must allege physical manifestations of the distress."  <u>Mottram v. Wells Fargo Bank, N.A.</u>, No. 15-cv-470-PB, 2016 DNH 046, 2016 WL 917905, at *4-*5, 2016 U.S. Dist. LEXIS 29224, at *11-*12 (D.N.H. Mar. 8, 2016) (internal quotation marks and citations omitted).

Accepting all of the allegations in Amatucci's complaint as true, none of the defendants' alleged acts approaches the level of atrocity necessary to assert a claim of intentional infliction of emotional distress.  Further, Amatucci does not assert that she has experienced any physical symptoms that are attributable to any conduct of the defendants.  For these reasons, the district judge should dismiss Claim 10, alleging that defendants are liable to her for the intentional and negligent infliction of emotional distress.

35

L.   Defendant Dean Rondeau

Amatucci names WPD Officer Dean Rondeau as a defendant to this action, but has not asserted any facts to implicate him in any of the claims she has asserted in this action.  Accordingly, the district judge should drop Rondeau from this action.


II.  Motion for Summary Judgment (Doc. No. 17)

Amatucci has filed a motion entitled "Motion for Summary Judgment" (doc. no. 17).  As there is not yet any defendant appearing in the case, the motion is premature.  The district judge should therefore deny the motion without prejudice to Amatucci's ability to file a motion for summary judgment at the appropriate stage of this proceeding.


**Conclusion**

For the foregoing reasons, the court recommends that the district judge dismiss Claims 1(b)-(c), 1(e), 2(d), 3(c), 3(d)(ii), 4(a)-(b), 5(b)-(c), 6(a)-(c), 7, 8(c), 9, and 10, from this action.  The court further recommends that the district judge drop defendants Anne Marble, Trooper Greg Dube, Officer

Dean Rondeau, WPD Prosecutor Timothy Morgan from this action, and the Wolfebor Police Department, as Amatucci has not asserted any actionable claim against those defendants.  Finally, the district judge should deny Amatucci's motion for summary judgment (doc. no. 17), without prejudice.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 21-22 (1st Cir. 2014).


_____
Andrea K. Johnstone
United States Magistrate Judge


August 5, 2016

cc:   Josephine Amatucci, pro se


37