**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Josephine Amatucci</u>

v.                                           Case No. 15-cv-356-JL

<u>James O'Brien, Town of Wolfeboro,
Dave Owen, Rob Houseman, Stuart
Chase, and Shane Emerson</u>

## REPORT AND RECOMMENDATION

In this action, Josephine Amatucci brings claims that arise from: (1) a series of incidents that took place on May 7, 2014; and (2) a "No Trespass Order" ("NTO") issued by the Wolfeboro Town Manager and Board of Selectmen about two weeks later, in response to the events of May 7, that prohibits her from entering two town buildings.  Before this magistrate judge for a Report and Recommendation is "Defendants' Motion for Judgment on the Pleadings Based on Res Judicata and Collateral Estoppel" (Doc. No. 132) seeking judgment on the pleadings as to most, but not all, of plaintiff's claims.  Plaintiff objects.  For the reasons that follow, defendants' motion should be granted in part and denied in part.

## Legal Standard

Pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure, when ruling on a motion for judgment on the pleadings, the court must "take all well-pleaded facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 140 (1st Cir. 2016) (citing Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008)).  Judgment on the pleadings in favor of the defendant is appropriate "if the complaint fails to state facts sufficient to establish a 'claim to relief that is plausible on its face.'"  Gray, 544 F.3d at 324 (quoting Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008)).

## Background

The factual basis for plaintiff's claims has been set out in narrative form, and in considerable detail, in the undersigned magistrate judge's August 5, 2016 Report and Recommendation (Doc. No. 52) ("August 5 R&R").  On the assumption that interested readers are familiar with the August 5 R&R, or can refer to it, the court will not provide a detailed recitation of the facts here.  Instead, the court will identify specific factual allegations, as necessary, in the analysis that follows.

## Discussion

Relying on the doctrines of res judicata, also known as claim preclusion, and collateral estoppel, also known as issue preclusion, defendants move for judgment on the pleadings on eighteen of plaintiff's claims, identified in the court's October 19, 2016 Order (Doc. No. 111) ("October 19 Order) as Claims 1(a), 1(d), 2(a)-(c), 3(a), 3(b), 3(d), 5(a), 8(a), 8(b), 11, and 12, and part of a nineteenth claim, identified in the October 19 Order as Claim 8(d).  Specifically, "[t]he only claim that defendants do not claim [to be] barred by res judicata or collateral estoppel is [a] claim . . . against Town Manager [Dave] Owen for alleged defamation . . . and the corresponding respondeat superior claim . . . against the Town [of Wolfeboro] related to that alleged defamation."  Defs.' Mem. of Law (Doc. No. 132-1), at 5.  In this section, the court begins by outlining the applicable legal principles and then proceed to evaluate each defendant's entitlement to judgment on the pleadings.

## A.  Res Judicata and Collateral Estoppel

Defendants invoke both res judicata and collateral estoppel to bar plaintiff from relitigating various claims and issues that have already been decided against her in: (1) Amatucci v.

Town of Wolfeboro, No. 212-2015-CV-095 ("Amatucci I"), which was litigated before Judge Temple in the New Hampshire Superior Court; (2) Amatucci v. Welman, No. 212-2014-CV-00114 ("Amatucci II"), which was also litigated before Judge Temple in the Superior Court; (3) State v. Amatucci, No. 464-2014-CR-00836 ("Amatucci III"), a criminal case prosecuted before Justice Patten in the District Division of the New Hampshire Circuit Court; and (4) Amatucci v. Town of Wolfeboro, No. 13-cv-501-PB ("Amatucci IV"), which was litigated before Judge Barbadoro in this court.  While defendants invoke the doctrines of both res judicata and collateral doctrines, and rely upon the preclusive effect of both state-court judgments and a previous judgment from this court, the only legal principles necessary to rule on defendants' motion are those governing the application of res judicata in a second action in a federal court when the first action took place in a state court.[1]

"[F]ederal courts generally have . . . consistently accorded preclusive effect to issues decided by state courts." Allen v. McCurry, 449 U.S. 90, 95 (1980) (citing Montana v.

---

[1]In other words, there is no need to describe the doctrine of collateral estoppel at all, or to explain the application of either collateral estoppel or res judicata to a case in this court when the previous judgment was rendered by another federal court.

United States, 440 U.S. 147, 153 (1979) and Angel v. Bullington,

330 U.S. 183 (1947)).

> The modern version of the [full faith and credit
> statute], 28 U.S.C. § 1738, provides that "judicial
> proceedings . . . shall have the same full faith and
> credit in every court within the United States and its
> Territories and Possessions as they have by law or
> usage in the courts of such State . . . ."  This
> statute has long been understood to encompass the
> doctrines of res judicata, or "claim preclusion," and
> collateral estoppel, or "issue preclusion."

San Remo Hotel, L.P. v. City & Cty. of S.F., 545 U.S. 323, 336

(2005) (citation omitted).  Thus, with respect to res judicata,

"[a] federal court must give preclusive effect to a state-court

judgment if the state court would."  Universal Ins. Co. v.

Office of Ins. Comm'r, 755 F.3d 34, 37–38 (1st Cir. 2014)

(citing Atwater v. Chester, 730 F.3d 58, 63 n.3 (1st Cir.

2013)).

As for the elements of res judicata under New Hampshire

law, the New Hampshire Supreme Court ("NHSC") has explained that

> [t]he doctrine [of res judicata] prevents parties from
> relitigating matters actually litigated and matters
> that could have been litigated in the first action, if
> three elements are met: "(1) the parties are the same
> or are in privity with one another; (2) the same cause
> of action was before the court in both instances; and
> (3) the first action ended with a final judgment on
> the merits."

412 S. Broadway Realty, LLC v. Wolters, --- N.H. ---, ---, 147 A.3d 417, 425 (2016) (quoting Merriman Farm, Inc. v. Town of Surry, 168 N.H. 197, 199 (2015)).

**B.   Stuart Chase**

Plaintiff brings three claims against Stuart Chase.  In May of 2014, Chase was the chief of the Wolfeboro Police Department ("WPD").  The court considers each of plaintiff's claims against Chase in turn.

1.   Claim 1(a)

In Claim 1(a), plaintiff asserts that Chase violated her First Amendment right to petition the government for a redress of grievances on May 7, 2014, when he threatened to "get her" and to arrest her, and then caused her to be arrested after a traffic stop, in retaliation for exercising her First Amendment right to file an administrative complaint with the WPD alleging misconduct by various WPD officers.  Defendants argue that Claim 1(a) is precluded by three previous judgments, including Judge Temple's order of dismissal in Amatucci II.  With respect to Amatucci II, defendants are correct.[2]

---

[2]Thus, the court need not consider defendants' arguments that Claim 1(a) is precluded by Amatucci's conviction in Amatucci III and by Judge Barbadoro's order of dismissal in Amatucci IV.

Plaintiff's primary legal objection to defendants' motion for judgment on the pleadings is her argument that traditional rules of preclusion, such as res judicata and collateral estoppel, are not applicable to claims that have been asserted through the mechanism of 42 U.S.C. § 1983.  While plaintiff relies on <u>Allen</u> for the proposition that traditional rules of preclusion do not apply to § 1983 claims, the <u>Allen</u> Court actually held that the res judicata and collateral estoppel do apply in § 1983 actions.  <u>See</u> <u>Allen</u>, 449 U.S. at 105.

In <u>Amatucci II</u>, Amatucci sued eight defendants, including Chase.[3]  In his order granting defendants' motion to dismiss, Judge Temple characterized Amatucci's claims as follows:

> Amatucci brings nine counts against the defendants in her original complaint: (1) a claim that [WPD Lieutenant Dean] Rondeau violated Amatucci's due process rights; (2) a claim of intentional and negligent infliction of emotional distress; (3) "a <u>Monell</u> claim" against the Town of Wolfeboro; (4) a claim of conspiracy to commit fraud and perjury; (5) a criminal attempt charge; (6) a criminal false misrepresentation charge; (7) a criminal conspiracy charge; (8) a criminal threatening charge; and (9) a false imprisonment charge.

Defs.' Mem. of Law, Ex. M (Doc. No. 132-14), at 2.

---

[3]The other seven defendants in <u>Amatucci II</u> were Shane Emerson, the New Hampshire Attorney General, Dean Rondeau, the Town of Wakefield, the Town of Wolfeboro, Richard Tracey, and Jared Welman.

The first paragraph of Amatucci's complaint in Amatucci II

states:

> And Chief Chase in a bogus traffic violation, and an
> unlawful incarceration on May 7, 2014.  In retaliation
> against the Plaintiff for demanding an investigation
> of criminal acts of police officer James O'Brien, and
> Lt. Rondeau.

Defs.' Mem. of Law, Ex. F (Doc. No. 132-7), at 3.  Amatucci then

elaborated:

> On May 7, 2014 the Plaintiff went inside the Wolfeboro
> police department to complain to police chief Stuart
> Chase about the criminal act of Lt. Dean Rondeau, on
> August 21, 2013, when he [accused] Plaintiff of a
> bogus traffic violation, that she did not commit, and
> violated her right under the procedural due process of
> the law.  Instead of accepting my Complaint and
> investigating it, as required by Internal Affairs, the
> Chief [lunged] at the Plaintiff and criminally
> threatened her warning her that if she ever accuses
> any of "his men" of misconduct again he will get her
> and come after her and arrest her.  Which he did that
> same day, when he and another cruiser followed her
> with the lights and siren's [sic] on and accused her
> of speeding when she was not speeding, and put her in
> jail.  IN RETALIATION.  The police had no warrant.
> They arrested her and incarcerated her and impounded
> her car.

Id. at 12-13.  Finally, in Count III of her complaint in

Amatucci II, which asserted a claim under Monell v. Dep't of

Soc. Servs., 436 U.S. 658 (1978), Amatucci said this:

> Under the second requirement [for establishing a
> Monell claim], the Plaintiff establishes that Police
> Chief Stuart Chase in a deliberate act (of a decision-
> maker) with policymaking authority proximately caused
> her constitutional injuries.  When under the custom of

8

the Wolfeboro Police Department he refused to
investigate police misconduct, and in retaliation
[for] the Plaintiff's complaints of police misconduct,
the police chief criminally threatened the Plaintiff,
in the police station threatened her that if she ever
complains about police misconduct again, he will get
her and arrest her on the spot.  And that he did get
her when he had her accused of speeding, when she was
not speeding, and had her sent to jail when the law
does not allow for the person to be incarcerated for
such an offense, that a summons is issued.

Id. at 16.

Judge Temple granted the defendants' motion to dismiss in
Amatucci II.  The dismissal was based on the grounds that two
counts in Amatucci's complaint in that matter, including Count
III, were barred by res judicata; three counts failed to state a
claim on which relief could be granted; and four counts asserted
criminal claims rather than civil claims.

Claim 1(a) here is barred by res judicata.  Plaintiff did
not bring a First Amendment claim in Amatucci II, but she could
have, which is sufficient for the purposes of res judicata.  See
412 S. Broadway, 147 A.3d at 425.  Turning to the first element
of res judicata, identity of the parties, that element is
satisfied by the fact that Amatucci sued Chase in Amatucci II,
and Chase is the defendant on Claim 1(a) in this case.  The
second element, which requires that "the same cause of action
was before the court in both instances," id., is also satisfied.

9

In this legal context:

> The term cause of action is defined as the right to
> recover, regardless of the theory of recovery.
> Generally, in determining whether two actions are the
> same cause of action for the purpose of applying res
> judicata, we consider whether the alleged causes of
> action arise out of the same transaction or
> occurrence.

412 S. Broadway, 147 A.3d at 425 (internal quotation marks and

citations omitted).  Both Amatucci II and Claim 1(a) in this

case arose out of the same specific series of events that

occurred on May 7, 2014, involving Amatucci and Chase.  Finally,

as to the third element of res judicata, Amatucci II ended with

a final judgment on the merits.

Because defendants have established all three elements of

res judicata as to Claim 1(a), based on Judge Temple's order of

dismissal in Amatucci II, Claim 1(a) is barred by res judicata.

Accordingly, Chase is entitled to judgment on the pleadings on

that claim.

### 2.   Claim 1(d)

In Claim 1(d), plaintiff asserts that Chase committed the

state-law tort of assault against her on May 7, 2014, when he

pushed her out of the Wolfeboro Public Safety Building ("PSB").

Defendants argue that Claim 1(d) is precluded by two previous

judgments, including Judge Temple's order of dismissal in

Amatucci II.  For the same reasons that apply to Claim 1(a),
Claim 1(d) is barred by res judicata.  Accordingly, Chase is
entitled to judgment on the pleadings on Claim 1(d).

    3.   Claim 11

    In Claim 11, plaintiff asserts that Chase committed the
state-law tort of negligent infliction of emotional distress,
under New Hampshire law, by engaging in the acts underlying
Claims 1(a) and 1(d), which caused her to suffer extreme
emotional distress, insomnia, and uncontrollable outbursts and
crying jags.  Defendants argue that Claim 11 is precluded by
three previous judgments, including Judge Temple's order of
dismissal in Amatucci II.  For the same reasons that apply to
Claim 1(a), Claim 11 is barred by res judicata.  Accordingly,
Chase is entitled to judgment on the pleadings on Claim 11.

**C.  Robert Houseman**

    Plaintiff brings four claims against former Wolfeboro Town
Planner Robert Houseman.  On May 7, 2014, Houseman was the
Wolfeboro Town Planner and was also serving as the Acting
Wolfeboro Town Manager.  The court considers each of plaintiff's
claims against Houseman in turn.

    1.   Claim 2(a)

    In Claim 2(a), plaintiff asserts that Houseman violated her

First Amendment right to petition the government for a redress of grievances on May 7, 2014, when he prevented her from lodging complaints about misconduct committed by Houseman and Chase. Defendants argue that Claim 2(a) is precluded by three previous judgments, including Judge Temple's order of dismissal in Amatucci II.  With respect to Amatucci II, defendants are correct.[4]

In Amatucci II, Amatucci did not sue Houseman, but she did sue the Town of Wolfeboro ("Town").  As the court has already pointed out, Amatucci's original complaint in Amatucci II asserted a variety of claims arising from several events involving herself and Chase on May 7, 2014.  In a subsequent filing in Amatucci II, captioned "Addendum to Denial of Motion to Dismiss / No Res Judicata and Due Process Claim is Still Alive," Amatucci stated, concerning Houseman's actions on May 7:

> And the [acting] town Manager [Houseman] retaliated by allowing Anne Marble to call the police chief soon after the Plaintiff left her office, where she asked to see the Selectmen to tell them that the police chief had threatened her, RETALIATION.
>
> In pursuit of the Code of Silence, in a letter to the

---

[4]Because defendants' argument that Claim 2(a) is precluded by Judge Temple's order of dismissal in Amatucci II is dispositive of Claim 2(a), the court need not consider defendants' arguments that the claim is precluded by Amatucci's conviction in Amatucci III and by Judge Barbadoro's order of dismissal in Amatucci IV.

>Plaintiff, the Town Manager, Dave Owen commended and
>supported the actions of Rob Houseman, an employee of
>the town when he grabbed the Plaintiff, to stop her
>from leaving the town hall, until the police arrived.
>That the Town Hall [employees] Houseman, and Brenda
>LaPointe and Anne Marble the town managers secretary
>called the police department to warn them that she was
>heading to the Sheriff's office.  All these incidents
>in the town hall on May 7th [] set in motion the
>Plaintiffs unlawful arrest and incarceration, were all
>in RETALIATION in one way or another, against the
>Plaintiff [for] accusing the police of misconduct.

Defs.' Mem. of Law, Ex. H. (Doc. No. 132-9), at 3-4.

Claim 2(a) is barred by res judicata.  While Amatucci did
not raise a First Amendment claim in Amatucci II, she could
have, which is sufficient for the purposes of res judicata.  See
412 S. Broadway, 147 A.3d at 425.  As to the elements of res
judicata, the court has already stated that Amatucci II resulted
in a final judgment on the merits, which satisfies the third
element of res judicata.  As for the identity of the cause of
action in Amatucci II and the cause of action underlying Claim
2(a), the facts that Amatucci alleged in her complaint addendum
(Doc. No. 132-9), demonstrate that the cause of action before
the state court in Amatucci II included the interactions between
Houseman and Amatucci at the Wolfeboro Town Hall on May 7, 2014.

To satisfy the "in privity" element of res judicata, the
parties in the two actions must be "the same or . . . in privity
with one another."  412 S. Broadway, 147 A.3d at 425.  Town

officials sued for actions they took on behalf of a town sued in
a prior action, are in privity with the town even if the
individual town official was not sued in the prior action.  See
Sutliffe v. Epping School District, 627 F. Supp. 2d 41 (D.N.H.
2008), aff'd, 584 F.3d 314 (1st Cir. 2009).  Accordingly, the
Town of Wolfeboro, which was a defendant in Amatucci II, and
Houseman, who was employed by the Town at the time of the events
giving rise to Amatucci's claims against him, qualify as "same
parties" for the purposes of res judicata.

Because defendants have established all three elements of
claim preclusion as to Claim 2(a), based on Judge Temple's order
of dismissal in Amatucci II, Claim 2(a) is barred by res
judicata.  Accordingly, Houseman is entitled to judgment on the
pleadings on that claim.

2.   Claim 2(b)

In Claim 2(b), plaintiff asserts that Houseman violated her
Fourth Amendment rights on May 7, 2014, when he grabbed her arm
and confined her to a room in the Wolfeboro Town Hall, and
impeded her efforts to leave Town Hall, without probable cause
or a warrant permitting him to do so.  Defendants argue that
Claim 2(b) is precluded by two previous judgments, including
Judge Temple's order of dismissal in Amatucci II.  For the same

14

reasons that apply to Claim 2(a), Claim 2(b) is barred by res judicata.  Accordingly, Houseman is entitled to judgment on the pleadings on Claim 2(b).

###### 3.   Claim 2(c)

In Claim 2(c), plaintiff asserts that Houseman committed the state-law tort of assault and also committed the state-law tort of false imprisonment when he grabbed her arm and forced her to remain in a room in Town Hall, on May 7, 2014, thereby impeding her efforts to leave the building.  Defendants argue that Claim 2(c) is precluded by two previous judgments, including Judge Temple's order of dismissal in Amatucci II.  For the same reasons that apply to Claim 2(a), Claim 2(c) is barred by res judicata.  Accordingly, Houseman is entitled to judgment on the pleadings on Claim 2(c).

### D.   **Dave Owen**

Plaintiff brings six claims against Dave Owen.  In May of 2014, Owen was the Wolfeboro Town Manager.  Defendants argue that Owen is entitled to judgment on the pleadings on five of plaintiff's six claims against him.[5]  The court considers each of those five claims in turn.

---

[5]Defendants do not move for judgment on the pleadings on Claim 7, in which plaintiff asserts that Owen defamed her by making two statements to the Granite State News newspaper.

1.   <u>Claim 3(a)</u>

In Claim 3(a), plaintiff asserts that Owen violated her First Amendment associational right to enter and remain on public property, and also violated her First Amendment right to petition the government for a redress of grievances, by issuing an NTO prohibiting her from entering the Wolfeboro Town Hall and Public Safety Building, in retaliation for her complaints against both Town and WPD employees.  Defendants argue that Claim 3(a) is precluded by Judge Temple's order of dismissal in <u>Amatucci I</u>.  They are correct.

In <u>Amatucci I</u>, Amatucci sued the Town of Wolfeboro, in an action captioned "Motion to Remove 'No Trespass Order.'"  Defs.' Mem. of Law, Ex. U (Doc. No. 132-22), at 2.  Amatucci attached a letter, dated May 23, 2014, to the complaint she filed in <u>Amatucci I</u>.  That letter states, in pertinent part:

> In light of the unfortunate incidents at the Public Safety Building and Town Hall on Wednesday, May 7, 2014, and in light of several other incidents during the past several years, I am hereby ordering you, on behalf of the Town and until further written notice, not to enter the Public Safety Building at 251 South Main Street in Wolfeboro or the Town Hall at 84 South Main Street in Wolfeboro.  . . .
>
> This order should not be construed to prohibit you from attending any publically [sic] noticed meeting, such as a meeting of the Board of Selectmen, Planning Board or Police Commission.

16

> . . . .
>
> Should you violate this notice not to enter, as set
> forth above, the Town will prosecute you for criminal
> trespass under RSA 635:2 and under any other
> applicable statute, to the full extent provided by
> law.
>
> This order is issued pursuant to the Town Manager's
> and the Board of Selectmen's authority to regulate the
> use of Town property under RSA 37:5, RSA 41:11-a and
> any other applicable statute.  It is also issued
> pursuant to the authority of the Town Manager and the
> Board of Selectmen to manage and supervise the affairs
> of the Town to ensure the safety and well-being of its
> employees.

Id. at 23-24.  The letter was signed by Owen along with the five
members of the Wolfeboro Board of Selectmen.

Ultimately, Judge Temple granted the defendant's motion to
dismiss Amatucci's action.  Specifically, he ruled that "[t]he
plaintiff's 'Motion to Remove "No Trespass Order" Under Due
Process of the Law' is dismissed with prejudice."  Defs.' Mem.
of Law, Ex. Z (Doc. No. 132-27), at 2 .

Claim 3(a) is barred by res judicata.  While plaintiff does
not appear to have brought a First Amendment claim in Amatucci
I, she could have, which is sufficient for the purposes of res
judicata.  See 412 S. Broadway, 147 A.3d at 425.  Turning to the
first element of res judicata, identity of the parties,
plaintiff is now suing Owen for his actions as an agent for a
principal, the Town, that successfully defended a prior suit,

Amatucci I, that was based on the conduct at issue in Claim 3(a).  That places Owen in privity with the Town for purposes of res judicata.  See Sutliffe, 627 F. Supp. 2d at 51.  Amatucci I and Claim 3(a) in this case arose out of the same occurrence, i.e., the issuance of the NTO.  That satisfies the second element of res judicata.  Finally, Judge Temple dismissed the claims in Amatucci I with prejudice, which was a final judgment on the merits.  See Moulton-Garland v. Cabletron Sys., Inc., 143 N.H. 540, 542 (1999) ("[a] judgment entered 'with prejudice' constitutes a judgment on the merits of a matter, even if it resulted from a violation of a procedural rule") (citing Roberts v. GMC, 140 N.H. 723, 727 (1996) and Foster v. Bedell, 136 N.H. 728, 730 (1993)).

Because defendants have satisfied all three elements of claim preclusion as to Claim 3(a), based on Judge Temple's order of dismissal in Amatucci I, Claim 3(a) is barred by res judicata.  Accordingly, Owen is entitled to judgment on the pleadings on that claim.

2.  Claim 3(b)

In Claim 3(b), plaintiff asserts that Owen violated her First Amendment associational right to enter and remain on public property, and also violated her Fourteenth Amendment due

18

process rights, by issuing the NTO without providing her any pre-deprivation process.  Defendants argue that Claim 3(b) is precluded by Judge Temple's order of dismissal in Amatucci I. For the same reasons that apply to Claim 3(a), Claim 3(b) is barred by res judicata.  Accordingly, Owen is entitled to judgment on the pleadings on Claim 3(b).

      3.   <u>Claim 3(d)</u>

In Claim 3(d), plaintiff asserts that Owen committed the state-law tort of defamation by issuing the NTO, thereby communicating to the employees of the Town Hall and PSB that she had engaged in misconduct serious enough to warrant her exclusion from public property, causing damage to her reputation.  Defendants argue that Claim 3(d) is precluded by Judge Temple's order of dismissal in Amatucci I.  For the same reasons that apply to Claim 3(a), Claim 3(d) is barred by res judicata.  Accordingly, Owen is entitled to judgment on the pleadings on Claim 3(d).

**E.**    **<u>Shane Emerson and James O'Brien</u>**

Plaintiff brings two claims against Shane Emerson and James O'Brien, both of whom were officers of the WPD on May 7, 2014. The court considers each of those claims in turn.

1.   Claim 5(a)

In Claim 5(a), plaintiff asserts that Officers Emerson and O'Brien violated her First Amendment right to petition the government for a redress of grievances when they pulled her over and arrested her, in retaliation for her prior complaints about Town and WPD officials.  Defendants argue that Claim 5(a) is precluded by three previous judgments, including Judge Temple's order of dismissal in Amatucci II.  Because Emerson and O'Brien are not similarly situated for the purposes of res judicata, the court discusses the claims against them separately.

### a.   Emerson

Plaintiff did not bring a First Amendment claim in Amatucci II, but she could have, which is sufficient for the purposes of res judicata.  See 412 S. Broadway, 147 A.3d at 425.  Amatucci sued Emerson in Amatucci II, and he is a defendant on Claim 5(a) in this case.  That satisfies the first element of res judicata.  In Amatucci II, Amatucci litigated claims that arose from her May 7, 2014, arrest, which is the occurrence on which Claim 5(a) is based.  That satisfies the second element of res judicata.  And Amatucci II resulted in a final judgment on the merits, which satisfies the third element of res judicata.

Because defendants have established all three elements of claim preclusion as to Claim 5(a), to the extent that claim is asserted against Emerson, based on Judge Temple's order of dismissal in Amatucci II, Claim 5(a) as to Emerson, is barred by res judicata.[6]  Accordingly, Emerson is entitled to judgment on the pleadings on Claim 5(a).

### b. O'Brien

Unlike Emerson, O'Brien was not a defendant in Amatucci II, Amatucci III, or Amatucci IV, which are the three actions that resulted in judgments that have, or might have, a preclusive effect on Claim 5(a).  Defendants acknowledge as much, but make the following argument regarding the first element of res judicata:

> Even though O'Brien and Houseman were not sued in the prior cases based on the May 7, 2014 events, the Town and the Police Department, if not Chase and Emerson, all had the same interest in defeating Ms. Amatucci's far-fetched conspiracy theory.  The Town or Police Department's liability could have depended in part on the roles of O'Brien and Houseman.  That might also be true for Emerson (who wouldn't be part of the alleged conspiracy unless O'Brien was part of it and pulled Emerson into it) and perhaps true for the Chief because if O'Brien and Houseman had not acted, Ms.

---

[6]Because defendants' argument that Claim 5(a) is precluded by Judge Temple's order of dismissal in Amatucci II is dispositive of Claim 5(a), the court need not consider defendants' arguments that the claim is precluded by Amatucci's conviction in Amatucci III and by Judge Barbadoro's order of dismissal in Amatucci IV.

Amatucci might have gotten away instead of having the
sheriff's deputies stop her before she could reach the
sheriff's department.  In other words, if anyone in
Ms. Amatucci's conspiracy chain defeated her claims,
the chain of events would break and the entire claim
would fall apart.  Thus, it is fair to conclude that
O'Brien and Houseman, who were not previously sued in
the two past May 7 event lawsuits, were in privity
with those who were sued.

Defs.' Mem. of Law (Doc. No 132-1), at 21.

Under the circumstances of this case, res judicata is an
affirmative defense, and defendants "bear[] the burden of
proving that [it] appl[ies]."  Gray v. Kelly, 161 N.H. 160, 164
(2010) (citing McNair v. McNair, 151 N.H. 343, 354 (2004); In re
Zachary G., 159 N.H. 146, 151 (2009)).  The privity-by-
conspiracy theory on which defendants rely is broader than the
theory of privity articulated in Sutliffe, but defendants offer
no legal authority for the theory.  Because defendants bear the
burden of proving that res judicata applies, and have identified
no legal authority for their theory of privity, the court is not
inclined to embrace it.  Accordingly, O'Brien is not entitled to
judgment on the pleadings on Claim 5(a) on grounds of res
judicata.  Defendants' motion for judgment on the pleadings
should be denied as to Claim 5(a), as asserted against O'Brien,
without prejudice to defendants' ability to move to dismiss
Claim 5(a) under Rule 12(b)(6), or on any other appropriate

basis.

    2.   <u>Claim 12</u>

In Claim 12, plaintiff asserts that Officers Emerson and
O'Brien committed the state-law tort of negligent infliction of
emotional distress by engaging in the acts underlying Claim
5(a), which caused her to suffer extreme emotional distress,
insomnia, and uncontrollable outbursts and crying jags.
Defendants argue that Claim 12 is precluded by three previous
judgments, including Judge Temple's order of dismissal in
<u>Amatucci II</u>.

    a.   **<u>Emerson</u>**

For the same reasons that apply to Claim 5(a), Claim 12, as
to Emerson, is precluded by Judge Temple's order of dismissal in
<u>Amatucci II</u>.  Accordingly, Emerson is entitled to judgment on
the pleadings on Claim 12.

    b.   **<u>O'Brien</u>**

For the same reasons that apply to Claim 5(a), O'Brien is
not entitled to judgment on the pleadings on Claim 12 on grounds
of res judicata.

**F.**   **<u>Town of Wolfeboro</u>**

Plaintiff brings four claims against the Town.  The court
considers each of those claims in turn.

1.   Claim 8(a)

In Claim 8(a), plaintiff asserts that the Town violated her First Amendment associational right to enter and remain on public property, and also violated her Fourteenth Amendment due process rights, by issuing the NTO without providing her any pre-privation process.  Defendants argue that Claim 8(a) is precluded by Judge Temple's order of dismissal in Amatucci I. They are correct.

While plaintiff does not appear to have brought a First Amendment claim in Amatucci I, she could have, which is sufficient for the purposes of res judicata.  See 412 S. Broadway, 147 A.3d at 425.  Amatucci sued the Town in Amatucci I, and the Town is the defendant on Claim 8(a) in this case. That satisfies the first element of res judicata.  In Amatucci I, Amatucci litigated claims that arose from the issuance of the NTO, which is the occurrence on which Claim 8(a) is based.  That satisfies the second element of res judicata.  Finally, Amatucci I resulted in a final judgment on the merits, which satisfies the third element of res judicata.

Because defendants have established all three elements of claim preclusion as to Claim 8(a), based on Judge Temple's order of dismissal in Amatucci I, Claim 8(a) is barred by res

24

judicata.  Accordingly, the Town is entitled to judgment on the
pleadings on that claim.

    2.   <u>Claim 8(b)</u>

    In Claim 8(b), plaintiff asserts that the Town violated her
First Amendment right to petition the government for a redress
of grievances by issuing the NTO and by refusing to investigate
her complaints against Town and WPD employees, in retaliation
for her previous complaints against Town and WPD employees.
Defendants argue that Claim 8(b) is precluded by Judge Temple's
order of dismissal in <u>Amatucci I</u>.  They are correct.

    While plaintiff does not appear to have brought a First
Amendment claim in <u>Amatucci I</u>, she could have, which is
sufficient for the purposes of res judicata.  <u>See</u> <u>412 S.</u>
<u>Broadway</u>, 147 A.3d at 425.  Amatucci sued the Town in <u>Amatucci</u>
<u>I</u>, and the Town is the defendant on Claim 8(b) in this case.
That satisfies the first element of res judicata.  With regard
to the second element, <u>Amatucci I</u> involved claims that arose
from both the issuance of the NTO and the Town's alleged failure
to investigate her complaints.  That the claims in <u>Amatucci I</u>
arose from the issuance of the NTO is self-evident; <u>Amatucci I</u>
was initiated by a pleading captioned "Motion to Remove 'No
Trespass Order' Under Due Process of the Law."  Defs.' Mem. of

Law, Ex. U (Doc. No 132-22), at 2.  As for the part of Claim
8(b) that is premised upon the Town's alleged failure to
investigate, the court notes that Amatucci supported her
complaint in <u>Amatucci I</u> with a letter from Owen in which he
wrote:

> Relative to the request you made to me at the Board of
> Selectmen's meeting on May 21, 2014, where you asked
> that I undertake an investigation of the incidents
> that occurred on May 7th which resulted in your arrest,
> I decline to undertake any such investigation.

<u>Id.</u> at 25.  Moreover, the complaint in <u>Amatucci I</u> asked for the
following relief:

> I would like an OUTSIDE investigator, as allowed in
> the town Ordinance, to go to every employee in the
> town hall and question whether they think I am
> abusive, and to get statements from Houseman, LaPointe
> and Cathy regarding the May 7th incident.

<u>Id.</u> at 11.  In short, both <u>Amatucci I</u> and Claim 8(b) arose from
the same occurrences, which satisfies the second element of res
judicata.  And <u>Amatucci I</u> resulted in a final judgment on the
merits, which satisfies the third element of res judicata.

Because defendants have established all three elements of
claim preclusion as to Claim 8(b), based on Judge Temple's order
of dismissal in <u>Amatucci I</u>, Claim 8(b) is barred by res
judicata.  Accordingly, the Town is entitled to judgment on the
pleadings on that claim.

3.   Claim 8(d)

In Claim 8(d), plaintiff asserts that the Town is liable for the state-law claims asserted against any Town or WPD employee in this action, i.e., Claims 1(d), 2(c), 3(d), 7, 11, and 12, under the theory of respondeat superior.  Defendants argue that the Town is entitled to judgment on the pleadings on Claim 8(d), except to the extent that Claim 8(d) is based upon the alleged defamation underlying Claim 7.  The court agrees in part.  Because Chase, Houseman, Owen, and Emerson are entitled to judgment on the pleadings on: plaintiff's state-law claims against them, the Town is necessarily entitled to judgment on the pleadings on those portions of Claim 8(d) that are based on the conduct alleged in Claims 1(d), 2(c), 3(d), and 11; and the portion of Claim 8(d) that is based upon the conduct by Emerson that is alleged in Claim 12.  However, because O'Brien is not entitled to judgment on the pleadings on Claim 12, the Town is not entitled to judgment on the pleadings on the portion of Claim 8(d) that is based on the conduct by him that is alleged in Claim 12.

## Conclusion

For the reasons described above, defendants' motion for

judgment on the pleadings (Doc. No. 132), should be granted as
to Claims 1(a), 2(a)-(c), 3(a)-(b), 3(d), 5(a) as to Emerson,
11, and 12 as to Emerson.  As well, defendants' motion should be
granted as to Claim 8(d) except to the extent that claim is
based on the conduct by O'Brien that is alleged in Claim 12.
Regarding Claims 5(a) and 12 as to O'Brien, and the portion of
Claim 8(d) that is based upon the conduct by O'Brien that is
alleged in Claim 12, defendants' motion should be denied,
without prejudice to defendants' ability to file a motion to
dismiss those claims on any appropriate basis.  If the district
judge adopts this Report and Recommendation, plaintiff's case
moving forward will consist of the following claims: Claim 5(a),
as to O'Brien; Claim 7; the portion of Claim 8(d) that is based
on the conduct alleged in Claim 7; the portion of Claim 8(d)
that is based on the conduct by O'Brien that is alleged in Claim
12; and Claim 12, as to O'Brien.

Notwithstanding the Orders (Doc. Nos. 123, 144) issued by
the court on October 25, 2016 and December 7, 2016, any party to
this case may file an objection to this Report and
Recommendation.  Any objection to this Report and Recommendation
must be filed within 14 days of receipt of this notice.  See
Fed. R. Civ. P. 72(b)(2).  Failure to file an objection within

the specified time waives the right to appeal the district
court's order.  See United States v. De Jesús-Viera, 655 F.3d
52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins.
Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly
raised by objections to magistrate judge's report are subject to
review by district court; issues not preserved by such objection
are precluded on appeal).


                              _Andrea K. Johnstone_
                              Andrea K. Johnstone
                              United States Magistrate Judge


January 18, 2017

cc:  Josephine Amatucci, pro se
     Garry R. Lane, Esq.